# UNITED STATES DISTRICT COURT
for the
Southern District of Indiana

**SEALED**

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| | ) | 1:20-mj-1077 |
| Kenyasia Edmond | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   October 22, 2020   in the county of   Marion   in the
Southern   District of   Indiana   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Hobbs Act Robbery |
| 18 U.S.C. § 2119 | Carjacking |
| 18 U.S.C. § 924(c) | Brandishing of a Firearm in Furtherance of a Crime of Violence |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

/s/ Leonard Rothermich
*Complainant's signature*

Leonard Rothermich, SA/FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by
telephone   *(reliable electronic means)*

Date: December 10, 2020

City and state:   Indianapolis, Indiana

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT AND ARREST WARRANT

I, LEONARD P. ROTHERMICH, being duly sworn according to law, depose and state as follows:

## I. INTRODUCTION

1. I am and have been employed as a Special Agent with the Federal Bureau of Investigation ["FBI"] since November of 2014. Prior to that time, I spent 22 weeks training to be a Special Agent at the FBI Academy in Quantico, Virginia beginning on June 15, 2014. Through the FBI, I have received extensive training related to the investigation of federal crimes to include violent crime and firearms offenses. Prior to this, I spent five years on active duty in the United States Army as an officer in the Military Police Corps. I am currently assigned to the FBI Violent Crime Task Force ["VCTF"] in the Indianapolis Field Office of the FBI. In this assignment, I investigate all manner of violent crime, to include armed commercial robberies and firearm related offenses.

2. This affidavit is submitted in support of an application for a Warrant for Arrest of Kenyasia Edmond ["EDMOND"], black female, date of birth ["DOB"] XX-XX-2002. Based on my training and experience, and based on the facts below, there is probable cause to believe that EDMOND committed one count of being in violation of Title 18 USC, Secs. 1951, 2119, and 924(c) on October 22, 2020. Based on the obtained statements and evidence within this investigation, your Affiant believes that there is probable cause to prove the following:

    a.   EDMOND and a second black female ["SUBJECT 2"][1] committed an armed robbery and carjacking of an adult female ["the VICTIM"] on October 22, 2020 through the utilization of the online commerce ride sharing application Lyft.

3.   Title 18, United States Code, Section 1951(a) states: Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

4.   Title 18, United States Code, Section 2119 state: Whoever, with intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall be fined under this title or imprisoned not more than 15 years, or both.

5.   Title 18, United States Code, Section 924(c) states: Any person, who carries, brandishes, or uses a firearm during a crime of violence, in furtherance of such a crime, shall, in addition to the punishment provided for such a crime of violence, be sentenced to a term of imprisonment not less than seven years.

6.   Your Affiants knows that Lyft is an internet-based and user-to-user ride sharing marketplace, which is described more fully herein:

---

[1] Your Affiant knows the true name of SUBJECT 2, who was ultimately arrested with EDMOND on the date of the crimes described herein. However, SUBJECT 2 was a juvenile at the time of the incident, so her name and identifiers will not be included in this Affidavit.

a. Subscribed users of Lyft can utilize the company's website or mobile platform to hire the company's contracted drivers to give them rides to local destinations. Users register for rides by providing a name, cellular telephone number, and method of payment. From there, they can input their current location, desired destination, and total number in their party. The Lyft platform then searches for nearby available drivers with the appropriately sized vehicle to complete the request. Lyft notifies the potential drivers of the requested trip, which he or she may then accept and complete. Once the driver takes the user to the requested destination, the transaction is completed over the Lyft application. Lyft pays the contracted driver a wage for each fare based on the duration and distance of the trip. Lyft also retains a percentage of these payments. The company and its electronic servers that facilitate this form of commerce are headquartered in San Francisco, California.

7. The statements contained in this affidavit are based in part on information provided by, and conversations held with, Special Agents and Task Force Officers ["TFOs"] of the FBI; detectives and patrol officers of the Indianapolis Metropolitan Police Department ["IMPD"]; witnesses; and on my experience and background as a Special Agent of the FBI.

8. I have not included each and every fact that has been revealed through the course of this investigation. I have set forth only the facts that are believed to be necessary to establish the required foundation for this issuance of the requested Warrant for Arrest.

## II. BACKGROUND OF THE INVESTIGATION

9. On October 22, 2020, the VICTIM was performing within her employment duties as a contracted driver for Lyft. She operated her personally owned black colored 2012 Ford

3

Fusion, bearing Indiana license plate BPG898, throughout this time. At approximately 10:03 pm, her mobile Lyft application ["app"] notified her of a requested fare in the Glendale area of Indianapolis, Indiana. The VICTIM saw that the name of the requestor was listed as "Mariah" on the app and that her requested destination was the intersection of East 21st Street and Audubon Road. Upon her arrival in the area, she observed two black females ["SUBJECT 1" and "SUBJECT 2"] standing along the curb. SUBJECT 1 appeared to maintain a thinner build and was in her late teens. She wore a black sweatshirt and had a black mask covering the lower portion of her face. SUBJECT 2 appeared to be slightly larger than SUBJECT 1 but also possibly in her late teens. She wore a white colored hoodie with a gray marking across the front of it. She also had gold colored braids in her hair. The VICTIM asked if one of them was "Mariah", and they responded with the affirmative. The VICTIM then allowed both SUBJECTS into the backseats of her car. SUBJECT 1 sat behind her, while SUBJECT 2 entered into the rear passenger side seat.

10.   During the travel to E. 21st St. and Audubon Rd., there was minimal to no conversation amongst the occupants of the Ford. Upon nearing the requested destination, one of the SUBJECTS directed the VICTIM to drive to a specific spot on Audubon Road. The VICTIM noticed that it was poorly illuminated by street lights in that area. After parking the car, the VICTIM felt what she believed to be the muzzle of two pistols pressed against her. She specifically felt one against the right side of her head and the other against her torso. The

SUBJECTS ordered her out of the car but instructed her to leave all of her personal items behind before exiting, which included her cell phone and purse.

11. The VICTIM complied by opening her driver's side door and stepped onto the street. She observed SUBJECT 2 climb over the front seats to replace her from behind the steering wheel. SUBJECT 1 also exited the vehicle along the rear driver's side and pushed the VICTIM to the ground. The VICTIM landed on her chest and then felt SUBJECT 1's foot pressing hard against her back, which caused her pain. SUBJECT 1 ordered her not to move and then quickly ran around the car and into the front passenger seat. SUBJECT 2 drove the Ford away from the scene of the armed robbery and carjacking with the VICTIM's personal items still inside of it. The VICTIM ran to the nearby Clark's gas station, located at 5501 East 21st Street, Indianapolis, Indiana, and asked the employee there to call the police.

12. At this time, Detectives and Task Force Officers ["TFOs"] with the IMPD Covert Robbery Unit ["IMPD CRU"] and FBI VCTF were conducting investigative follow-up regarding an almost identical series of armed carjackings in the nearby area. These incidents over recent days also reportedly involved two younger black females ordering rides through the Lyft app and then robbing the driver at gun point for their money, phone, and vehicle.

13. TFO Buchman of the IMPD CRU responded to the Clark's gas station and took a statement from the VICTIM. As part of the unit's follow-up, they requested that the Marion County (Indiana) Dispatch Center broadcast a description of the incident and the stolen vehicle for all local law enforcement to be aware of. The IMPD CRU and FBI VCTF, in partnership with

the IMPD Special Weapons and Tactics Team ["IMPD SWAT"], immediately initiated a search for the Ford Fusion that night.

      14.     At approximately 1:30 am on October 23, 2020, IMPD SWAT Officer Kenneth Kunz ["Off. Kunz"] observed a black colored 2012 Ford Fusion traveling southbound from the intersection of East 21st Street and Arlington Avenue. The Ford matched the description originally broadcasted by Marion County Dispatcher earlier that night. However, it did not have the same license plate on it. Off. Kunz followed the vehicle to the 1400 block of Bolton Avenue. As it pulled over to the side of the road, Off. Kunz initiated his patrol vehicle's red and blue lights in order to detain its occupants for questioning. He observed three occupants exit from the Ford and move behind its passenger side away from where he was positioned outside of his own vehicle in full uniform. Based on his observations, he was later able to confirm for investigators that SUBJECT 1 exited from the driver's seat, and SUBJECT 2 exited from the front passenger seat. The third occupant was later determined to be a juvenile black male ["SUBJECT 3"][2], who had exited from the rear passenger seat. He specifically noticed that SUBJECT 1 had a teal colored object in her hand as she exited from the Ford and purposefully moved away from him. Off. Kunz originally thought the item may have been a cell phone.

      15.     Off. Kunz verbally made his presence known and ordered the SUBJECTS to lay on the ground while he waited for more officers to arrive. He observed SUBJECT 1 duck down behind the hood of the Ford after this and briefly out of his direct line of sight. He then heard what he believed to be a metallic object land on the street and slide away from SUBJECT 1's location. As more IMPD officers arrived at the scene, all three SUBJECTS were taken into

---

[2] Your Affiant knows SUBJECT 3's age to have been 15-years-old at the time of the events described within this Affidavit.

6

custody without incident or injury. As this transpired, Off. Kunz located a 9mm caliber SCCY brand semiautomatic pistol, bearing serial number 514265, in the location where he had heard the metallic object being discarded earlier. The firearm was loaded with a round in the chamber and teal in color.

16. The law enforcement on scene identified SUBJECT 1 to be EDMOND. She wore a black sweatshirt and had a black scarf wrapped around her neck, which easily could have been used to conceal her face. Furthermore, the officers determined that the Ford Fusion was the same vehicle stolen from the VICTIM that night through the identification of its VIN. They confirmed that both female SUBJECTS matched the physical descriptions previously provided by the VICTIM, to include SUBJECT 2 having blonde braids. Because the vehicle was confirmed to be stolen, the Detectives and TFOs on-scene immediately initiated a search of its contents. In doing so, they recovered a white colored hoodie with a gray marking across the front of it from the rear passenger seat. They found the VICTIM's cellular telephone underneath it. Inside of the purse determined to belong to EDMOND, they located the VICTIM's social security card, which the VICTIM had previously kept inside of her stolen wallet. The Ford's proper license plate (BPG898) was recovered from the trunk of the vehicle. Officers found multiple temporary license plates, to include ones that appeared to have been photo copied, in the backseat.

17. The IMPD transported all three SUBJECTS to the IMPD Robbery Office, located at 50 North Alabama Street, Indianapolis, Indiana, for questioning. Upon their arrival, TFO Buchman conducted an interview with EDMOND. Prior to giving a statement, he provided her with her *Miranda* rights, which she said that she understood and then voluntarily waived by signing an IMPD Advice of Rights form. EDMOND then ultimately admitted to participating in

the armed robbery and carjacking of the VICTIM with SUBJECT 2. She recalled using a Lyft app to lure the VICTIM to their location and siting behind her in the backseat once she arrived. However, EDMOND claimed that SUBJECT 2 was the one who put a gun against the VICTIM during the robbery and carjacking. EDMOND denied any knowledge of any other similar crimes that had transpired in the same area of Indianapolis in the days prior. Furthermore, EDMOND claimed she used a friend's Lyft app to order the ride but provided no further information on this friend.

18.   Following this, TFO Buchman conducted an interview of SUBJECT 3. Prior to providing a statement, SUBJECT 3's mother arrived at the IMPD Robbery Office. TFO Buchman then provided both parties SUBJECT 3's *Miranda* rights through an IMPD Juvenile Advice of Rights Waiver form. TFO Buchman then left the interview room in order to allow them to consult each other on their willingness to make a statement that night. After a certain amount of time had elapsed, SUBJECT 3 and his mother notified TFO Buchman that they were ready and willing to speak with him. They then completed the signing of the IMPD Juvenile Advice of Rights Waiver form and provided a statement. SUBJECT 3 ultimately explained that EDMOND and SUBJECT 2 had picked him up from his home of residence earlier that evening. They specifically picked him up in the Ford Fusion that he had later been detained from. He entered into the rear passenger seat and noticed multiple temporary Indiana license plates on it. The two females drove him away from house and then pulled over a short distance later. He recalled that EDMOND and SUBJECT 2 both exited from the Ford and physically removed its license plate. They placed it in the trunk before driving away again. The females next dropped

him off at a friend's house. They picked him up from there later that night, which was when he noticed that the Ford now had a temporary license plate secured to its rear bumper.

19. Your Affiant knows in his training and experience that Ford manufactures vehicles outside of the state of Indiana, which includes VICTIM's black colored 2012 Ford Fusion bearing Indiana license plate BPG898.

20. All of these events transpired within the Southern District of Indiana.

### III. CONCLUSION

21. Based on the information detailed above, I believe there is probable cause that EDMOND committed one count of being in violation of Title 18 USC, Secs. 1951(a)(1), 2119, and 924(c), which began on the night of October 22, 2020. More specifically, EDMOND and a juvenile female committed an armed robbery of the VICTIM, facilitated through the online marketplace Lyft, and then committed an armed carjacking of the VICTIM's 2012 Ford Fusion.

22. Accordingly, I respectfully request the Court to issue a criminal complaint and arrest warrant charging EDMOND with these offenses.

FURTHER YOUR AFFIANT SAITH NOT

/s/ Leonard P. Rothermich
Leonard P. Rothermich
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of the Fed. R. Crim. P. 4.1 by telephone.

Dated: December 10, 2020

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

10